GERMAN ALLIANCE INS. CO. *et al.* v. NEWBERN.

No. 356.    Opinion Filed January 11, 1910.

(106 Pac. 826.)

1. **INSURANCE — Iron-Safe Clause — Failure to Produce Books.** Failure of an insured to produce the books and inventory as required by a policy of fire insurance under penalty of forfeiture means a failure to produce them if they are in existence when called for, or if they have been lost or destroyed by the fault, negligence, or design of the insured.

2. **SAME—Loss of Inventory by Theft.** Where the inventory in question was stolen from an unlocked safe while the store building mentioned in the policy was actually open for business, and where under the terms of the policy the insured had a right during that time to keep it, **held,** that its loss and a consequent failure to produce the same will not invalidate the policy notwithstanding a provision that a failure to produce the same shall render the policy null and void, where the insured used such care on the occasion as prudent men acting in good faith would exercise.

(Syllabus by the Court.)

*Error from District Court, Garvin County; R. N. McMillan, Judge.*

Action by T. H. Newbern against the German Alliance Insurance Company. Four other actions by the same plaintiff were consolidated with this action. Judgments for plaintiff, and defendants bring error. Affirmed.

*Fulton, Stringer & Grant* and *Henry M. Carr,* for plaintiffs in error.—Citing: *Brown v. Palatine Ins. Co.,* 89 Tex. 590; *Northwestern, etc., Ins. Co. v. Mize,* 34 S. W. 670; *Western Assurance Co. v. Altheimer Bros.* (Ark.) 25 S. W. 1057; *Imperial Fire Ins. Co. v. Coss.,* 151 U. S. 452; May on Insurance, sec. 156; 2 Story on Contracts 547, sec. 975; *Ingle v. Jones,* 69 U. S. 1-10; *Jacksonville R. & N. Co. v. Hopper,* 160 U. S. 522; *Western Assur. Co. v. Kemendo,* 60 S. W. 661.

*S. T. Bledsoe* and *J. B. Thompson,* for defendant in error.

—Citing: *Liverpool, etc., Ins. Co. v. Kearney*, 94 Fed. 314, 180 U. S. 131; *Germania Ins. Co. v. Ashbey* (Ky.) 65 S. W. 611; *McNutt v. Virginia, etc., Ins. Co.* (Tenn.) 45 S. W.

TURNER, J.   On July 21, 1906, T. H. Newbern, defendant in error, sued the German Alliance Insurance Company, a corporation, plaintiff in error, in the United States Court for the Indian Territory, Southern District, at Pauls Valley, to recover the amount alleged to be due on a fire insurance policy issued by said company May 11, 1905, covering such losses as might be sustained by plaintiff in consequence of the destruction by fire of his store building, stock of general merchandise, and office furniture and fixtures therein contained, in the town of Byars, I. T.   Four other suits on similar policies pending here on appeal and presented by this record have been consolidated with this suit and abide the event.   Each of said policies contain the following, called the "iron-safe clause":

"Warranty to keep books and inventories and to produce them in case of loss.   The following covenants and conditions on the part of the German Alliance Insurance Company of New York are hereby made a part of the policy to which this clause is attached:

"First. The assured will take an itemized inventory of stock hereby insured at least once in each calendar year, and, unless such inventory shall have been taken within 12 calendar months prior to the date of this policy, the same shall be taken in detail within 30 days after said date, or this policy shall be null and void from and after the expiration of said thirty days, and upon demand of the insured, within three months from date of this policy, the unearned premium for the unexpired time of this policy shall be returned.

"Second. The assured will keep a set of books which shall clearly and plainly present a complete record of the business transacted, including all purchases, sales and shipment of such stock, both for cash and credit, from the date the inventory provided for in the first section of this clause, and during the continuance of this policy.

"Third. The assured will keep such books and inventory, and also the last preceding inventory, securely locked in a fireproof

safe at night, and at all times when the building mentioned in this policy or the portion thereof containing the stock described therein is not actually open for business; or, failing in this, the assured will keep such books and inventories at night, and at all such times, in some place not exposed to fire which would ignite or destroy the aforesaid building; and, in case of loss, the assured specifically warrants, agrees, and covenants to produce such books and inventories for the inspection of the company.

"In the event of failure on the part of the assured to keep and produce such books and inventories for the inspection of said company, this entire policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

After answer filed in which the company, in effect, insisted in defense thereto that the terms and conditions of said clause were conditions precedent to plaintiff's right to recover, and had not been kept and performed by him, there was trial to a jury. At the close of plaintiff's testimony defendant demurred to the evidence, which was overruled and exceptions saved, whereupon defendant introduced its testimony. There was verdict and judgment for plaintiff, and, after motion for a new trial filed and overruled, defendant brings the case here, and assigns as error the overruling of said demurrer.

The facts and inferences therefrom reasonably deducible are few and undisputed. They disclose that the inventory provided for in the policy was taken in due time preceding the fire, but was not thereafter produced; that the fire which destroyed the stock and building covered by the policy occurred on the night of March 5, 1906; that about 8 o'clock that night and while said store was open for business the insured took the same out of his safe, which was kept in the office, for the purpose of consulting the same with a view to writing a letter; that, after writing the letter, he set the invoice book in which it was contained back into the safe, and went to wait on some customers in another part of the store leaving the safe unlocked; that he locked it about two hours thereafter, when he closed up for the night. The fire occurred about midnight, and the next morning, on opening the safe after it had cooled, the inventory was not

there. The theory upon which the case was tried was that it had been stolen from the safe, and this we think is fairly inferable from the evidence. It is not claimed that the loss of the inventory was due to the bad faith of plaintiff, neither is it relied on in the briefs that there was error in the charge of the court.

In support of defendant's contention, it is in effect urged that this "iron-safe clause" is a promissory warranty, and that defendant has not substantially complied with its terms. Whether promissory warranty or not, we think this contract, like all others, should be reasonably interpreted and construed so as to work no injustice or lead to absurd consequences. We do not think it was intended to make plaintiff's right of recovery depend in every instance on the actual production of the inventory. There are exceptions. We think all required by the "clause" is that the insured shall produce the inventory after the fire if within his power, and that it should be construed as charging him with responsiblity for its loss and consequent inability to produce in all cases where such loss has been due to a wrongful, fraudulent, or negligent act on his part. *East Tex. F. Ins. Co. v. Harris.* 7 Tex. Civ. App. 647, 25 S. W. 720; *Phoenix Ins. Co. v. Schwartz,* 115 Ga. 113, 41 S. E. 240, 57 L. R. A. 752, 90 Am. St. Rep. 98. Or, as stated in the syllabus in *Liverpool, etc., Ins. Co. v. Kearney & Wise,* 180 U. S. 131, 21 Sup. Ct. 326, 45 L. Ed. 460:

"Failure of the insured to produce the books and inventory as required by a policy of fire insurance under penalty of forfeiture means a failure to produce them if they are in existence when called for, or if they have been lost or destroyed by the fault, negligence, or design of the insured."

It cannot be said that the failure to produce in this instance was due to either of the causes enumerated, but was rather due to the result of an unavoidable casualty, and that, too, while the insured was acting within his rights under the terms of the policy. The policy provides:

"The assured will keep such books and inventory, and also the last preceding inventory, securely locked in a fireproof safe at night, and at all times when the building mentioned in this

policy, or the portion thereof containing the stock described therein, is not actually open for business"—

thereby clearly implying that, when the building is actually open for business, the inventory may be kept in an unlocked safe. In the case last cited it was held, in effect, that, where a loss of the inventory occurred during the confusion incident to the exercise by the insured of a right under the policy, a failure to produce it will not vitiate the policy when the insured uses that degree of care on the occasion which a prudent man acting in good faith would exercise.

*Liverpool & L. & G. Ins. Co. v. Kearney, supra,* was error to the United States Court of Appeals for the Eighth Circuit to review a decision affirming a judgment in favor of plaintiff in an action on insurance policies covering property in Ardmore, I. T. The facts were that on the night of April 18, 1905, between the hours of 1 and 3 a. m., a fire accidentally broke out in the town of Ardmore some 300 yards from plaintiff's place of business. Efforts were made to check the flames, which failed, and when so near to said place of business that the windows of the store were cracking from heat, and the building was about to take fire, one of the plaintiffs entered the building for the purpose of taking therefrom and removing to a safe place the books of the firm, thinking it better to remove them than to take the chances of having them destroyed by fire. He opened the safe in which they were deposited for the night, and removed them to his residence, some distance away. In the hurry and confusion incident to the removal, the inventory was lost, and could not be produced after the fire. It was not claimed that its loss was due to either fraud or bad faith on the part of plaintiffs or either of them. It was insisted in that case, as in this, that the terms of this clause of the policy had not been kept and performed by plaintiffs, and it was complained most that the last inventory of their business had not been produced. The court in effect held that the insured in attempting to remove the books from the safe to a place of safety were acting within their rights under the terms of the policy, and in passing said:

"We are of opinion that the failure to produce the books and inventory referred to in the policy mean a failure to produce them if they are in existence when called for, or if they have been lost or destroyed by the fault or negligence or design of the insured. Under any other interpretation of the policies, the insured could not recover if the books had been stolen, or if they had been destroyed in some other manner than by fire, although they had been placed 'in some secure place not exposed to a fire' that would reach the store. If the plaintiffs had the right, under the terms of the policy, as undoubtedly they had, to remove their books and inventory from the safe to some secure place not exposed to a fire which might destroy the building in which they carried on business, surely it was never contemplated that they should lose the benefit of the policies if in so removing their books. and inventory they were lost or destroyed, they using such care on the occasion as a prudent man acting in good faith would exercise"—

and affirmed the judgment of the trial court.

And so, paraphrasing, we say, that, if plaintiff had the right as undoubtedly he had to keep his inventory in an unlocked safe during the time his store building mentioned in the policy was actually open for business, surely it was never contemplated that he should lose the benefit of his policy if in so doing it was lost, he using, as it has been found in this case, he did use, such care on the occasion as a prudent man acting in good faith would exercise.

We are therefore of opinion that the court did not err in overruling the demurrer to the evidence, and for that reason the judgment of the trial court in this and each of the causes abiding the event is affirmed.

All the Justices concur.