# WESTERN NAT. LIFE INS. CO. v. WILLIAMSON-HAL-SELL-FRASIER CO.

No. 2472.   Opinion Filed April 5, 1913.

(131 Pac. 691.)

1. **INSURANCE—Iron-Safe and Inventory Clauses—Effect of Breach.** The iron-safe and inventory clauses in fire insurance policies are promissory warranties, and an unjustifiable breach of them by the insured prevents recovery.

2. **SAME—Recovery on Policy.** If inventories and books have been kept as required by the terms of the policy, the insured is entitled to recover, although the inventories and books have been lost, provided the loss has occurred without the fault, negligence, or design of the insured, and where the insured has used such care in the premises as a prudent man acting in good faith would exercise.

3. **WITNESSES—Competency—Husband and Wife.** The wife is an incompetent witness in a case if her husband is interested in the result of the action and will share in any recovery that may be had, although the action is in the name of a third party.

4. **SAME—Agency.** When the wife is acting as agent of the husband in respect to the transaction about which she is called to testify, and her testimony is otherwise admissible, the fact that the transaction occurred in the presence of her husband does not prevent her from testifying.

5. **SAME—Sufficiency of Evidence.** The facts examined, and held to constitute the wife the agent of the husband.

6. **SAME—Question for Court.** It is the duty of the court to pass upon the competency of witnesses, and it is error to admit the testimony of a witness whose competency is challenged and then submit to the jury an instruction directing them to disregard the testimony providing they find that the witness is incompetent to testify.

7. **EVIDENCE—Action on Insurance Policy—Acts of Agents—Admissibility—Predicate.** Testimony was admitted tending to show that an officer of the defendant corporation made a corrupt offer. The testimony tended to show that this officer was the secretary of the company and in charge of the particular matter of business. Held, that it was unnecessary to show that the officer had authority to make the improper offer.

8. **APPEAL AND ERROR—Harmless Error—Submission of Issues—Competency of Witness.** Where, in an action on a fire insurance policy, the wife was clearly competent to testify as she did, her testimony being concerning a transaction wherein she acted as her husband's agent, error in submitting the question of her competency to the jury was not prejudicial to the defendant.

(Syllabus by Ames, C.)

*Error from District Court, Pottawatomie County;*
*Roy Hoffman, Judge.*

Action by the Williamson-Halsell-Frasier Company against the Western National Life Insurance Company to recover on a fire insurance policy. Judgment for plaintiff, and defendant brings error. Affirmed.

*Blakeney & Maxey,* for plaintiff in error.
*Lydick & Eggerman,* for defendant in error.

Opinion by AMES, C. W. J. Grace was the insured. The plaintiff was one of his creditors. Grace's stock of merchandise was totally destroyed by fire. A day of two after the fire Grace assigned his claim against the insurance company to the plaintiff as collateral security. The plaintiff sued and recovered judgment.

The first error assigned is that the court erred in giving the following instruction:

"The jury is instructed that the failure of the insured to produce the books and inventories as required by the policy of fire insurance means a failure to produce them if they are in existence when they are called for, *or if they have not been lost or destroyed by the fault, negligence, or design of the insured.* If the insured has made a reasonable effort to produce the required books and inventories, and has failed through no fault of his own, such substantial compliance will be sufficient, and if the jury believe that the books and inventories, if you find that such were kept, *have been lost without the culpable negli-*

*gence or wrongful or fraudulent act or design of the insured or his assignee,* the jury is instructed that the loss and consequent failure to produce the same will not invalidate the policy, notwithstanding the provision that the failure to produce the same shall render the policy null and void, *where the insured and the assignee have used such care on the occasion as a prudent man acting in good faith would exercise.*" (Italics ours.)

One of the defenses was that the insured had not kept and produced his inventories and books as required by the terms of the policy; the iron-safe and inventory clauses being the customary ones in insurance policies. The plaintiff's excuse for failure to produce was that the books had been lost after the fire without fault or negligence on his part. The iron-safe and inventory clauses are promissory warranties, and an unjustifiable breach of them prevents a recovery. *Shawnee Fire Ins. Co. v. Thompson & Rowell,* 30 Okla. 466, 119 Pac. 985; *German American Ins. Co. v. Fuller,* 26 Okla. 722, 110 Pac. 763; *Gish v. Insurance Co. of North America,* 16 Okla. 59, 87 Pac. 869, 13 L. R. A. (N. S.) 826. On the other hand, "failure of an insured to produce the books and inventory, as required by a policy of fire insurance under the penalty of forfeiture, means failure to produce them if they are in existence, if called for, or if they have been lost or destroyed by the fault, negligence, or design of the insured." *German Alliance Ins. Co. v. Newbern,* 25 Okla. 489, 106 Pac. 826, 28 L. R. A. (N. S.) 337. And a substantial compliance with these provisions is sufficient. *Home Ins. Co. v. Ballard,* 32 Okla. 723, 124 Pac. 316. The evidence to which this instruction was addressed tended to show that an inventory was taken and kept at the residence of the insured and in compliance with the requirements of the policy; that a few days after the fire a representaive of the plaintiff called upon the insured with reference to his indebtedness; that he was assisting the insured in the matter of making his proofs of loss and collecting his insurance; that the books were delivered to this agent of the plaintiff for use in settlement with the insurance company; that this agent received the books and took them away with him; that he left the town of the fire upon a train, carrying

the books; that he laid them upon a seat in the railroad car; that he changed his seat to engage in conversation with some one, or for some other purpose, leaving the books; that he went to sleep; that he was to get off at Holdenville; that when the train stopped he awoke; that he looked for the books where he had left them and in several adjoining seats; that he did not have time to make further search, but had to jump off the train; that he wired the railway company at McAlester to make further inquiries, but that the books were never found, and consequently were never produced by the insured as required by the terms of the policy. The italicized portions of the instruction give the material conditions justifying a loss; that is, that the books must be produced if in existence, and that their loss will not be an excuse, unless it has been without the fault, negligence, or design of the insured. The term "culpable negligence" may be too strong, and the instruction would be better if the word "culpable" was omitted; but an examination of the italicized portion shows that the substance of the instruction was to the effect that the loss would excuse the plaintiff, provided that he and the insured had used such care on the occasion as a prudent man acting in good faith would exercise, and that the loss had not occurred by reason of their fault, negligence, or design. We think the instruction is a subsantial compliance with the rule laid down in the Newbern case, *supra,* and are not disposed to reverse the case on account of the improper use of the word "culpable."

The next assignment of error relates to the admission of the testimony of Mrs. Grace, the wife of the insured, over the objection that she was an incompetent witness. The testimony was admitted upon the theory that in the matters about which she was testifying she was acting as agent of her husband, and therefore was within the terms of section 5842, Comp. Laws 1909, which provides that:

"The following persons shall be incompetent to testify:
*   *   *   (3) Husband and wife, for or against each other, except concerning transactions in which one acted as the agent

of the other, or when they are joint parties and have a joint interest in the action; but in no case shall either be permitted to testify concerning any communication made by one to the other during the marriage, whether called while that relation subsisted, or afterwards.  *  *  *"

The substance of Mrs. Grace's testimony was that she assisted in taking the inventory; that her husband called off the articles, and price, and she took them down in a book; that she took care of the book, keeping it at her residence and having charge of it until after the fire; that this and the other books were kept by her on the dresser at night, and were there when the store was burned; that after the fire she gave the books to Mr. Butts, the agent of the plaintiff; that at the time he was there her husband was in bed sick; that she delivered the books to Mr. Butts by Mr. Grace's direction, all three being present at the time. It is true that her husband is not the plaintiff in this case, but the testimony shows that the assignment is to the plaintiff as collateral security, and that the surplus after the payment of the plaintiff's debt is for the benefit of the husband. The verdict is for more than the plaintiff's debt, and therefore the husband is interested in the result of the action, and under these facts his wife cannot testify unless she could testify if he were the plaintiff himself. *In re Valentine,* 93 Wis. 45, 67 N. W. 12; *La Barre v. Wood,* 54 Vt. 452; *McEwen v. Shannon et al.,* 64 Vt. 583, 25 Atl. 661; *Swift v. Martin,* 19 Mo. App. 488; *Phillips v. Poulter,* 111 Ill. App. 330; *Bird v. Hueston,* 10 Ohio St. 418; *Johnson v. Boice,* 40 La. Ann. 273, 4 South. 163, 8 Am. St. Rep. 528; *Lindsay v. McCormick,* 82 Va. 479, 5 S. E. 534. We have recently had occasion to examine this subject in the cases of *Fish v. Bloodworth,* 129 Pac. 32, 36 Okla. —, and *Muskogee Electric Traction Co. v. McIntire, post,* and, under the principles laid down in those two cases, we think that Mrs. Grace's testimony was admissible.

It is next urged that the court erred in giving an instruction advising the jury that husband and wife are incompetent to testify except under the circumstances stated in the statute, and

that in this case, while Mrs. Grace's testimony had been admitted, the jury should exclude every part of it, if any, except in the cases where she was acting as the agent of her husband. This instruction shifted the court's responsibility to the jury and was improper. It is the duty of the court to pass upon the admissibility of evidence, and where the testimony of the wife is objected to on the ground of incompetency, and it is sought to introduce it because she comes within the exception, the court should determine this question. *Cairns v. Mooney,* 62 Vt. 172, 19 Atl. 225; *Commonwealth v. Reagan,* 175 Mass. 335, 56 N. E. 577, 78 Am. St. Rep. 496; *Phoenix Ins. Co. v. Holcombe,* 57 Neb. 622, 78 N. W. 300, 73 Am. St. Rep. 532; *Grand Lodge of Ill., etc., v. Wieling,* 168 Ill. 408, 48 N. E. 59, 61 Am. St. Rep. 123. The trial court should not avoid the responsibilities which the law imposes upon him by shifting them to the jury. The judge is an important and indispensable element in the trial of a lawsuit, and should meet his duties without hesitation. His duties are just as important as those of the jury. He should guide the jury in its deliberations. He should inform them as to the law and exercise a superintending control of the administration of justice, and, if the testimony of Mrs. Grace had been improperly admitted, we would not hesitate to reverse this case on account of this instruction. But as her testimony was properly submitted to the jury concerning a transaction in which she acted as agent for her husband, the error of the court in giving this instruction could not have resulted prejudicially to the defendant, and therefore the case could not for that reason be reversed.

The witness Butts, the agent of the plaintiff, testified that Mr. Archinault offered to give him $500 not to make proof of loss, the effect of which would have been to pay the plaintiff but defeat a recovery on the policy for the benefit of Grace. This offer, if made, was equivalent to an offer of a bribe and manifestly would be of material weight with the jury. The testimony tended to disclose that Mr. Archinault was secretary of the company; in fact, his name appears as secretary upon the

policy sued on. But it is argued that it must be shown that he was authorized by the defendant to make this proposition before the testimony was admissible. If he was the secretary of the company, and if he was in charge of the adjustment of the loss, and if he made a corrupt proposition, we do not think it was necessary for the plaintiff to prove that he was authorized by the defendant to make this corrupt proposition. It requires no argument to show that practically that would be an impossible thing to do.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.