**CHICAGO, R. I. & P. R. CO. v. COTTON.**

No. 7266—Opinion Filed Jan. 9, 1917.

(162 Pac. 763.)

**1. Release—Settlement—Cancellation.**

A written contract compromising a claim for damages between the claim agent of the railway company and the person injured, if honestly entered into cannot be avoided for frivolous reasons; but, where such contract has been obtained by unfair means and fraudulent representations on the part of the claim agent of the railway company and for a consideration incommensurate with the injuries done, the same may be set aside.

**2. Fraud—Misrepresentations — "Fraudulent Representation."**

The gist of a fraudulent representation is the producing of a false impression upon the mind of the other party, and if this result is actually and intentionally accomplished, the means of accomplishing it are immaterial.

**3. Release—Validity—Misrepresentations.**

Where a railway company sets up by way of defense to an action for personal injuries to the plaintiff, a married woman, a written contract of settlement, which contract signed by herself and husband, purports, for a nominal consideration, to be a settlement in full for damages received by the plaintiff, also by her husband and minor child, and the plaintiff alleges by way of reply and proves that such contract was obtained by fraudulent representations of the claim agent of the

railway company, relied upon by the plaintiff at the time she signed the agreement, the plaintiff, notwithstanding the signing of such agreement, may recover in an action against the railway company such damages as she may prove.

**4. Trial—Reception of Evidence—Agency— Husband.**

When it is necessary to prove that the husband is the agent of the wife in order to render him a competent witness, as a preliminary question, he is competent to testify that he acted as her agent; and if after so testifying the court permits him to give testimony concerning matters in which he acted as the agent of his wife, such action of the trial court will not be disturbed on appeal to this court.

**5. Husband and Wife—Agency—Evidence.**

When it is shown that the husband is acting as agent of his wife in respect to any transaction concerning which he is called upon to testify, and his testimony is otherwise admissible, the fact that the transaction occurred in the presence of the wife does not prevent him from testifying as to any transaction in which he was acting as her agent, and the mere fact of her presence at the time does not disprove his agency.

**6. Appeal and Error—Review—Verdict.**

A verdict of the jury will not be disturbed by this court because of incompetent testimony permitted to go before the jury, unless upon an examination of the whole record and the testimony this court is of the opinion that such testimony might have influenced the verdict of the jury, and that the jury would not have reached the same verdict irrespective of such incompetent testimony.

**7. Trial—Instructions—Weight of Evidence —Release.**

Special instruction requested by defendant examined, and held, that the court did not commit error in refusing to give such instruction.

**8. Release—Fraud—Evidence.**

Evidence in the instant case examined, and it is held, that the same sustains the verdict of the jury, and that there is no prejudicial error in the record.

(Syllabus by Stewart, C.)

Error from District Court, Caddo County; J. T. Johnson, Judge.

Action by Ruby Cotton against the Chicago, Rock Island & Pacific Railway Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

R. J. Roberts, C. O. Blake, W. H. Moore, K. W. Shartel, and Dyke Ballinger, for plaintiff in error.

A. J. Morris, for defendant in error.

Opinion by STEWART, C. The defendant in error, hereinafter called plaintiff, brought

action against plaintiff in error, hereinafter designated as defendant, to recover damages for injuries alleged to have been received by the plaintiff, caused by the negligent colliding of the train of defendant railroad company, upon which the plaintiff, her husband, Guy Cotton, and her two year old child were at the time riding as passengers, with another train of the defendant. The plaintiff alleges, among other things, that at the time of the collision she was pregnant, and that because of the injuries received at the time she prematurely gave birth to twins, the same being dead; that as a result of said collision she received permanent injuries on account of which the plaintiff suffered damages in the sum of $18,200.

The defendant filed a general denial, and also specially pleaded what was termed a "general release," which defendant alleged was made and executed for a consideration paid by defendant, by way of compromise and settlement of any damage that the plaintiff, also her husband, Guy Cotton, and her minor daughter, Tressie Cotton, may have received; the consideration for said release being the sum of $125. The defendant made reply to said answer, denying each and every affirmative allegation therein, and further admitting the execution of the release and the signing of a draft payable to the order of Guy Cotton and Ruby Cotton, in the sum of $125, which draft was paid, but plaintiff alleges the truth to be that said release was procured through fraud, artifice, and deceit of the claim agent or adjuster of the defendant company, and that she executed the release because of the false and fraudulent representations made to her at the time of its execution by said claim agent of the company; that the release was prepared by said claim agent; that plaintiff was inexperienced in business matters and was suffering excruciating pain because of the injuries she had received, and that when she attempted to read the release the claim agent falsely represented to her he was making no settlement with her and it was not necessary for her to read same; that he simply wanted it signed for the purpose of binding her minor child and her husband; that believing and relying upon said false and fraudulent statements the plaintiff signed said release; that plaintiff did not receive any part of the consideration for said release.

The cause was duly submitted to a jury and a verdict rendered for the plaintiff in the sum of $1,000. Motion for a new trial was duly filed by the defendant, which was overruled by the court and excepted to by defendant. Judgment was rendered in favor of the plaintiff, from which judgment of the court and overruling of motion for a new trial, the defendant appealed to this court.

The plaintiff presents its argument under the following specifications of error: (1) Motion for instructed verdict should have been sustained because the evidence failed to prove fraud or misrepresentation. (2) Incompetent evidence. (3) The court should have instructed the jury as to the status of Dr. Wyatt.

Specification of error No. 1, in which the defendant complains of the refusal of the court to instruct a verdict for the defendant, will first be considered. It is not disputed by the defendant that, under the evidence in this case, the plaintiff was damaged by the negligence of the defendant in the way and manner set forth in plaintiff's petition, nor is it claimed that the verdict is excessive. But the defendant urges that a general release signed by the plaintiff and her husband, Guy Cotton, was executed in which for the sum of $125 it appears on the face of said release that the said Guy Cotton and Ruby Cotton have waived all claims for damages, both for themselves and for the minor daughter, Tressie Cotton, all of whom it is claimed, were injured at the same time by the negligence of the defendant.

It is true the courts favor compromises and the ending of disputes by agreements fairly and honestly made and reduced to writing, and that ordinarily such contracts, when made, are binding upon all the parties to the same, but it is as much the duty of the courts to protect the weak, the illiterate, and the unwary as it is to enforce written contracts. In order for any contract to be valid, there must be a meeting of the minds, and there should be no misunderstanding or fraudulent practice by either party. The parties should contract on equal terms, and each should understand what was in the mind of the other.

In St. L. & S. F. R. Co. v. Richards, 23 Okla. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032, Justice Dunn holds in the syllabus:

"Where personal injuries have been suffered, for which a liability exists, and a release therefor has been fraudulently procured for a grossly inadequate sum, an action for damage may be maintained without first obtaining a decree to rescind or to cancel the release; and the plaintiff is not precluded from attacking a release so obtained, when it is set up as a defense, because he has not restored or tendered back the amount received by him at the time the release was obtained."

In Herndon v. St. Louis & S. F. R. Co.,

37 Okla. 256, 128 Pac. 727, Judge Brewer holds in the syllabus:

"An employe of a railroad was killed through the alleged negligence of the railroad. He left a widow who shortly after his death gave birth, alive, to a son. Before the birth of the son the railroad made a contract of settlement and release with the widow; after its birth the widow qualified as administratrix, and brought suit against the railroad in her representative capacity, alleging that her rights as widow had been settled, but that the son had rights as a beneficiary in the cause of action, and that such rights had not been settled for. The railroad answered setting up that the widow was the sole and only heir and the only person entitled to recover, and that she had been fully settled with, and then set out settlement as a complete defense to the cause of action as to the son. A reply was filed to this answer alleging fraud and mistake, and that the true contract of settlement made was only of her individual rights, and that the rights of the child were not settled for, or within the contemplation of either party, and that, if the words of the contract of settlement as used in reducing it to writing were broad enough to embrace the rights of the child, then that such words did not express the true contract, but were inserted through fraud or mistake. Held, that a demurrer to the reply was improperly sustained."

In St. Louis & S. F. R. Co. v. Reed, 37 Okla. 350, 132 Pac. 355, it is held by Judge Robertson, speaking for this court:

"A 'representation' within the meaning of the law of fraud is anything short of a warranty, which proceeds from the action or conduct of the party charged, and which is sufficient to create upon the mind a distinct impression of fact conducive to action. The gist of fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, and, if this result is actually accomplished, the means of accomplishing it are immaterial."

From an examination of all the evidence in this case, we do not doubt that there is evidence reasonably tending to show that the allegations contained in plaintiff's reply as to the execution of the release were true. The circumstances under which the release was obtained, the inadequacy of the consideration, and the testimony as to what was said and done by the claim agent of the defendant, all tend to support such defense. It must therefore follow that the judgment of the lower court cannot be disturbed unless there is other prejudicial error shown by the record or case-made.

Under the second assignment of error, the defendant urges that Guy Cotton, being the husband of the plaintiff, was an incompetent witness, and that the court committed prejudicial error in permitting him to testify. The case-made shows that the court made the following ruling:

"The court will rule that this witness is incompetent to testify in behalf of his wife, except where it was shown that he was acting as agent of his wife. He is disqualified except in certain conditions."

The evidence is to the effect that the plaintiff and her husband went to the office of one Dr. Wyatt for the purpose of talking over a settlement with the defendant, that the husband was acting as the agent of the wife in the transaction, and that, though the wife was present, the negotiations had were largely between the husband as the agent of the wife, and the claim agent of the defendant. The husband testified as to taking up the question of settlement for his wife as her agent.

It has been held by this court that the husband is a competent witness to testify that he acted as the agent of his wife. Smith et. al. v. Travel, 20 Okla. 512, 94 Pac. 529.

In Western Nat. Life Insurance Company v. Williamson-Halsell-Frasier Company, 37 Okla. 213, 131 Pac. 691, it was held by Judge Ames, speaking for the court:

"When the wife is acting as agent of the husband in respect to the transaction about which she is called to testify, and her testimony is otherwise admissible, the fact that the transaction occurred in the presence of her husband does not prevent her from testifying."

In deciding the question of competency of the witness, the court is not only the judge of the law, but also of the preliminary questions of fact necessary to be decided in order to determine the question of competency, and it is the universal doctrine that on the question of fact the decision of the trial court is conclusive, and not subject to reversal unless clearly wrong, as being against the evidence or wholly without support of facts. 30 Am. & Eng. (2nd Ed.) 977.

The court having heard the evidence as to the agency and having decided that the husband was competent to testify under the preliminary facts proved, and there being evidence reasonably supporting such holding, we are unable to disturb the finding of the court in this respect. We may add, however, that all of the matters to which the husband testified were also shown by the testimony of the plaintiff. In our opinion there is ample evidence to sustain the verdict of the jury without the testimony of the husband, and the same verdict likely would have been

reached without the testimony of the husband. Such testimony, even if incompetent, which, however, we do not hold, is not prejudicial.

We come to the last assignment of error, in which the defendant complains of the refusal of the court to give the following instruction to the jury:

"Instruction No. 1: You are instructed that under the evidence in this case there is nothing to show that Dr. Wyatt had any connection generally or on this particular occasion with the railroad company, but, on the contrary, he acted as the family physician of the plaintiff. You will therefore not consider any acts or advice given by the said Dr. Wyatt as the act of a servant of the railroad company."

There was evidence in this case that Mr. Hardcastle, the claim agent of the defendant, had consulted with Dr. Wyatt concerning the condition of the plaintiff, and also some evidence to show that Dr. Wyatt had at times past treated the plaintiff as a physician. In our opinion, if the court had given the instruction on behalf of the defendant, the same would have constituted reversible error in favor of the plaintiff. It is clearly a charge on the weight of the testimony and an attempt to bolster the credibility of a particular witness. The court did not commit error in refusing to give the same.

Having disposed of all the assignments of error, and the court being of the opinion that the verdict of the jury is reasonably sustained by the evidence in this case, the verdict will not be disturbed.

The action of the district court of Caddo county in this case should be affirmed.

By the Court: It is so ordered