# HERNDON v. ST. LOUIS & S. F. R. CO.

No. 1294.   Opinion Filed January 16, 1912.

Rehearing Denied April 13, 1913.

(128 Pac. 727.)

1. **DEATH—Actions for Causing Death—Persons Entitled to Maintain Action—"Existing Person."** A child, unborn at the time of its father's death but later born alive, is to be considered under the laws of this state as an existing person at the time of its father's death, and is therefore a beneficiary and entitled to participate in any damages recovered in an action brought under the statute for wrongfully causing the death of the father.

2. **REFORMATION OF INSTRUMENTS—Right·to Relief—Mistake.** Where parties have agreed upon the terms of a contract, and in reducing it to writing the language used does not, in fact, express the true agreement, upon clear and convincing proof of the mistake, equity will afford relief by reforming the contract so that it speak the true agreement.

3. **RELEASE—Pleading.** An employee of a railroad was killed through the alleged negligence of the railroad. He left a widow who shortly after his death gave birth, alive, to a son. Before the birth of the son the railroad made a contract of settlement and release with the widow; after its birth the widow qualified as administratrix, and brought suit against the railroad in her representative capacity, alleging that her rights as widow had been settled, but that the son had rights as a beneficiary in the cause of action, and that such rights had not been settled for. The railroad answered setting up that the widow was the sole and only heir and· the only person entitled to recover, and that she had been ·fully settled with, and then set out settlement as a complete defense to the cause of action as to the son.' A reply was filed to this answer alleging fraud and mistake, and that the true contract of settlement made was only of her individual rights, and that the rights of the child were not settled for, .or within the contemplation of either party, and that, if the words of the contract of settlement as used in reducing it to writing were broad enough to embrace the rights of the child, then that such words did not express the true contract, but were inserted through fraud or mistake.   Held, that a demurrer to the reply was improperly sustained.

(Syllabus by Brewer, ·C.)

*Error from District Court, Choctaw County;*

*D. A. Richardson,: Judge.*

Action by Carrie Herndon, widow and administratrix of Ben Herndon, deceased, against the St. Louis & San Francisco Railroad Company.        Judgment for defendant, and plaintiff brings error.   Reversed and remanded.

*Howe & Stanley,* for plaintiff in error.

*W. F. Evans, R. A. Kleinschmidt, J. H. Grant,* and *Charles E. McPherren,* for defendant in error.

Opinion by BREWER, C.  This suit was filed in the district court of Choctaw county, Okla., December 4, 1908, by Carrie Herndon, as widow and administratrix of the estate of Ben Herndon, deceased, against St. Louis & San Francisco Railroad Company.  The plaintiff in error was the plaintiff below, and the defendant in error defendant below, and the parties will hereafter be referred to as they were known in the trial court.

The petition alleged, in the usual form, the jurisdictional facts, the injury on April 24, 1908, and death of her husband, Ben Herndon, with allegations of negligence as causing it, her appointment as administratrix; that the suit is brought for the sole use and benefit of R..B. Herndon, son of deceased, who was born about four months after the death of the father; that the son was entirely dependent on its deceased father for maintenance, education, training, etc., and further:

"(8)   Plaintiff states that the defendant company, after the death of said Ben Herndon, and before the birth of R. B. Herndon, settled with the widow of said Ben Herndon for her part of the damages to which she and the unborn child would be entitled under the laws of the state of Oklahoma for the wrongful death of said Ben Herndon; that said settlement was made before the appointment of this plaintiff as administratrix, and with the knowledge on the part of the defendant company of the pregnant condition of said widow, and the child yet unborn, who also was entitled to damage by reason of the wrongful death of his father, Ben Herndon.  (9)   That this suit is brought by this personal representative for the sole and exclusive benefit of

Vol. 37—17.

said R. B. Herndon, who is the only child of Ben Herndon, deceased."

The petition closes with the usual prayer for damages and judgment.

On March 20, 1909, the defendant filed answer in which appears after general denial the following:

"Defendant admits that on the 24th day of April, 1908, Ben Herndon, the husband of this plaintiff, while in the employ of this defendant, received injuries which resulted in his death on the 30th day of April, 1908. And defendant says that at the time of his death said Ben Herndon left surviving him no issue, but that he left surviving him as his sole and only heir at law Carrie Herndon, his widow, plaintiff in this case. Defendant further answering says that there has been a full accord, satisfaction, adjustment, and settlement between the parties to this action for all claims for damages or causes of action arising or growing out of the death of said Ben Herndon, in the following manner, to wit: That prior to the issuance of letters of administration to the said Carrie Herndon, and prior to the institution of this suit, the said Carrie Herndon, as the widow and sole heir at law of said Ben Herndon, and the only person entitled to recover from the defendant on account of the death of said Ben Herndon, and the only person entitled to institute a cause of action against said defendant arising and growing out of the death of said Herndon, there being no administrator appointed, did on the 27th day of May, 1908, in consideration of the sum of $2,500 to her paid by the defendant, release and discharge said defendant from any and all claims, demands, or causes of action, which she as the widow of said Ben Herndon might have against said defendant, both for her own account and for the heirs and next of kin of said Ben Herndon, a copy of said release is hereto attached, made a part hereof, and for certainty marked Exhibit A.

" 'EXHIBIT A.

" 'AGREEMENT AND SETTLEMENT.

" 'In consideration of the sum of two thousand five hundred ($2,500.00) dollars, paid by the St. Louis & San Francisco Railroad Company, to Carrie Herndon, the widow of R. B. Herndon, deceased, who was a resident of Hugo, Choctaw county, Oklahoma, and who died on or about April 30th, 1908, from injuries received in an accident on the St. Louis & San Fran-

cisco Railroad Company, at Boswell, Choctaw county, Oklahoma, on or about April 24th, 1908, and there being no administrator or executor of his estate, designated or appointed, it is agreed between the said Carrie · Herndon, and said railroad company, that all and every claim, demand and cause of action of · said Carrie Herndon, as the widow of R. B. Herndon, deceased, both for her own account and for the heirs of said R. B. Herndon, and for his next of kin against said railroad company on account of said injuries and death of R. B. Herndon, her husband, and all damages caused thereby is hereby settled, released, satisfied and discharged in full.

"'Executed in duplicate at Hugo, Choctaw county, Oklahoma, this 27th day of May A. D., 1908.

"'Mrs. Carrie Herndon, Widow of said R. B. Herndon, Deceased.

"'J. H. Boren, A. H. Mansfield, Chas. G. Shull, R. B. Herndon, Witnesses.'"

The reply of plaintiff, to which a demurrer was sustained, is as follows:

"* * * Plaintiff admits that she executed a release to the said defendant company releasing said company from any claim or damage for her individual right to damages for the .death of her husband, but denies that she ever executed a release, or agreed to execute any release, for the damages to which her then unborn child is entitled by reason of the wrongful death of said Ben Herndon. Plaintiff further states that if the legal effect of the release pleaded by defendant is to cut off the right of her then unborn child to recover damages for the death of his father, Ben Herndon, then said release was obtained by the agent and representatives of the railroad company by fraud and misrepresentation on the part of said agent, and a misapprehension of law by said plaintiff, of which the said representative of the railroad company was aware at the time of the execution of the release, and which he did not rectify, in this, to wit: That the claim agent and representative of the said defendant company, A. H. Mansfield, called upon her to procure a release for her claim for damages as widow, on the 27th day of May, 1908, and at a time when she was mentally incapaciated by reason ·of the recent death of her husband, Ben Herndon; that he stated to her 'that she.was the only person entitled to any damage by reason of said death, and the only heir of said R. B. Herndon, her husband; that in settling, the amount of money to be paid to

her was her individual damage, there being no other person entitled to any damage by reason of the said death;' that, relying on the statement of said claim agent, she agreed to settle her individual damage as the widow for $2,500, which was paid her; that, after procuring her consent to settle as aforesaid, on the statement and representations aforesaid said agent and representative of said defendant company prepared the release which release was to contain the agreement to settle her individual claim for damages as widow; that said release was read over to her, and she signed same, and that the expressions in said release, 'and for the heirs of said R. B. Herndon and for his next of kin,' plaintiff thought referred to herself alone, it having been represented to said plaintiff by said claim agent that she was the only person entitled to damage and the only heir of said Ben Herndon; that at the time of the signing of said release said defendant company knew of her misapprehension of the legal effect of said instrument and knew that she understood said release to mean that it only covered her individual claim for damages, and did not rectify said misapprehension; that said trick and scheme was done intentionally by the claim agent and representative of said defendant company for the purpose of defrauding this plaintiff and her then unborn child of whose legal existence the said defendant company, through its said agent, was aware. Plaintiff further states that at her time of executing the release aforesaid, she was laboring under a misapprehension of law, in this: That she did not know that her then unborn child was entitled, if born alive, to damages for the death of its father; that said defendant company knew of plaintiff's misapprehension of the law, and did not rectify same, and worked the aforesaid scheme and trick to defraud this plaintiff and the said unborn child in the premises; that plaintiff relied on the said agent and representative of said railroad company to prepare the release in conformity with his agreements and representations, and signed same in full belief that in so doing she was only making a release of her individual damages as widow. Plaintiff further states she knows nothing of the methods of railroad companies and claim agents, and did not at that time; that she was ignorant of the rights of her then unborn child, and that said claim agent knew of her ignorance of said rights and used the misrepresentations and statements aforesaid in furtherance of his scheme to defraud this plaintiff and her unborn child, R. B. Herndon, Jr.; that plaintiff did not have legal advice or assistance in the settlement aforesaid; that the release itself was prepared by the agent and

representative of the said defendant company, and she never had seen it until it was presented for her signature, and then same was read by the said representative as aforesaid, and same was misunderstood by this plaintiff as hereinbefore set out. * * *"

Upon this state of the pleadings, the court sustained a demurrer to the reply of plaintiff to defendant's answer, pleading a settlement and release; plaintiff refused to plead further, and the court gave judgment for defendant on the pleadings and dismissed the petition; the plaintiff brings the cause here on a transcript of the record for review of the action of the court.

This suit is based on sections of Comp. Laws 1909, which are as follows:

"Section 5945. When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived, against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased.

"Section 5946. That in all cases where the residence of the party whose death has been or hereafter shall be caused as set forth in section 5945 of this article, is or has been at the time of his death in any other state or territory, or when being a resident of this state, no personal representative is or has been appointed, the action provided in said section 5945 may be brought by the widow, or where there is no widow, by the next of kin of such deceased."

The plaintiff contends that under the laws of this state the child, unborn at the date of its father's death, was an existing person, and therefore a beneficiary under the statute, in any sum recovered or to be recovered for the wrongful death of its father. The defendant in its brief admits as follows:

"In the case at bar, under our statutes, the child of Ben Herndon must be regarded as an existing person at the time settlement was made by its mother, and was therefore bound by such settlement."

The statute (Comp. Laws 1909) on the subject is as follows:

"Section 5032. A child conceived, but not born, is to be deemed an existing person so far as may be necessary for its interests in the event of its subsequent birth."

The Supreme Court of Texas in the case of *Texas & P. Ry. Co. v. Robertson et al.*, 82 Tex. 657, 17 S. W. 1041, 27 Am. St. Rep. 929, says:

"A child unborn at the death of its father is a 'surviving child' within the meaning of the Texas statute allowing surviving children to bring suit for damages for the death of their parent."

In the same court in *Nelson v. Gal. H. & S. A. Ry. Co.*, 78 Tex. 621, 14 S. W. 1021, 11 L. R. A. 391, 22 Am. St. Rep. 81, the syllabus is:

"Under Rev. Stat. Tex. art. 2903, which provides that an action on account of injuries causing death 'shall be for the sole and exclusive benefit of the surviving children.' A posthumous child may recover damages for his father's death."

In A. & E. Ency. L. (2d. Ed.) vol. 27, p. 316, it is said:

"Posthumous children inherit and take under statutes of succession in the same manner as if they had been born in the lifetime of the father, and were surviving heirs; the child in its mother's womb is considered as born for all purposes of its own interest, and takes by descent since its conception, provided it be capable of inheriting at the moment of its birth."

And in A. & E. Ency. L. (2d Ed.) vol. 22, p. 1082, it is also said:

"It has been frequently held that under a devise or bequest to children a posthumous child will take."

See, also, 13 Cyc. 336; *Galveston, etc., Ry. Co. v. Contreas,* 31 Tex. Civ. App. 489, 72 S. W. 1051. 14 Cyc. 39:

"Both at common law and under the statutes of the different states, posthumous children take as heirs and distributees, an infant being deemed *in esse* for the purpose of taking an estate for its benefit, from the time of conception, provided it is born alive, and after such a period of feotal existence that its continuance in life may be reasonably expected. A posthumous child takes directly from the parent at birth, his estate remain-

ing meanwhile in abeyance. Accordingly it cannot be divested of an inheritance, unless by due process of law to which it is made a party."

As supporting the general doctrine that posthumous children share in the estate of the father, if born alive, to the same extent as if born in his lifetime, see the following authorities: *Kalfus, etc., v. Crawford & Wife,* 82 Ky. 314; *Waterman v. Hawkins,* 63 Me. 156; *Hall v. Hancock,* 15 Pick. (Mass.) 255, 26 Am. Dec. 598; *Smith, Adm'r, v. McConnell,* 17 Ill. 135, 63 Am. Dec. 340; *McConnell et al. v. Smith, Adm'r,* 23 Ill. 611; *Botsford v. O'Conner et al.,* 57 Ill. 72; *Morrow v. Scott,* 7 Ga. 535; *Bishop's Heirs v. Hampton,* 11 Ala. 254; *Nelson v. Iverson,* 24 Ala. 9, 60 Am. Dec. 442; *Bowen v. Hoxie,* 137 Mass. 527; *Pearson v. Carlton,* 18 S. C. 47; *Marsellis v. Thalhimer,* 2 Paige (N. Y.) 35, 21 Am. Dec. 66; *Aubuchon v. Bender,* 44 Mo. 560; *Harper v. Archer,* 4 Smedes & M. (Miss.) 99, 43 Am. Dec. 472.

In the Supreme Court of California this question seems to have been considered in *Daubert v. Western Meat Co. et al.,* 139 Cal. 480, 73 Pac. 244, 96 Am. St. Rep. 154. This case is cited by defendant as authority on the point that a settlement by the mother bars a recovery after birth by a posthumous child. But that case is not directly in point here, for the reason that the widow sued and recovered judgment, and the defendant had no knowledge of her condition or of the child. In this case full knowledge in defendant is alleged at the time of settlement. In the California case, *supra,* we think that Justice Beatty, in his able dissenting opinion, had the correct view of the law. He says:

"A child conceived, but not yet born at the time of the father's death or at the time of the judgment in favor of the mother, has, in this respect, the same rights as a child living at the time of the father's death. In both the department and banc opinion the first of these propositions is somewhat discussed with the apparent purpose of deciding against it, but in the end that line of reasoning is abandoned, and a decision of the point expressly reserved, the appeal being disposed of upon the sole ground that, whatever may be the right of a living child in such case, a posthumous child has no such right, be-

cause the latter is a part of the mother, and she is the sole heir of her deceased husband. Neither the first nor the final opinion quotes the language of section 29 of the Civil Code, or makes any attempt to show how it can be construed to mean the exact opposite of what it plainly says: 'A child conceived but not yet born is to be deemed an existing person so far as may be necessary for its interests in the event of its subsequent birth.' Why does not this plain declaration of the statute place a posthumous child upon the same footing with a living child with respect to an action under section 377 of the Code of Civil Procedure? If it would ever be necessary for the interests of a living child to prosecute a separate action after a recovery by its mother, how can it be less the interest of a posthumous child to prosecute the action? Is it again denied that a posthumous child is heir to its father? Has it less interest in the amount recoverable as compensation for the loss of family support? Is it better able than a living child to intervene in the first action? Is there some ground of estoppel against it that could not be urged against the suit of the living child? Is he participant of his mother's fraud in concealing his existence?"

We think there can be no doubt but that the child, R. B. Herndon, unborn at the time of his father's death, but later born alive, is to be considered under our laws as an existing person at the time of his father's death, and therefore a beneficiary and entitled to participate under the statute in any recovery of damages for the wrongful death of its father, should such recovery be proper, under the law and facts of the case, and so hold.

Having disposed of this preliminary question, we next approach the most serious proposition in the case—i. e., the alleged settlement and release—signed by the mother shortly prior to the birth of the child. This release was pleaded as a complete defense to the cause of action, and it is urged here that such is its effect. It will be remembered that the plaintiff in this suit does not seek to recover any sum for herself; she seeks only to recover, as administratrix, for the child's interest in the alleged cause of action under the statute. She admits in her petition that, as far as her individual interest is concerned, she has been settled with, and she avers that her own rights as a

beneficiary were the only rights considered in the settlement and which were settled for.

It clearly appears, both from the petition and the reply, that; independent of the allegations of fraud, misrepresentations, shock, and mental worry and incapacity of the plaintiff at the time of settlement, plaintiff contends that, in fact, the contract of settlement really made between the parties, as understood by them at the time, was only for her individual right of damages as widow, and that, if the language used by the draftsman, in writing the contract, was such as to take into contemplation and settlement the interest of the child, then that the language used did not truly express the real contract entered into by the parties. In other words, that both parties understood the contract, and that there was a mutual mistake or actual fraud as to the effect of the language used. In such cases equity will relieve. This question has been fully considered and the rule sustained in *Farmers' & Merchants' National Bank v. Hoyt*, 29 Okla. 772, 120 Pac. 264, The first subdivision of the syllabus is as follows:

"In this state, whilst the distinction between law and equity is abolished, equitable relief may be awarded by the district court under proper allegations when sustained by the required measure of proof. (a) Such equitable relief may be invoked by means of an equitable defense to defeat plaintiff's legal cause of action. (b) In invoking such equitable defense where necessary, a written instrument, on account of mistake or accident, not expressing the facts and mutual intention of the parties thereto, parol evidence may be admitted as to the facts and the mutual intention."

See, also, as directly in point, the case of *Gross Construction Co. v. Hales, et al., ante,* 129 Pac. 28.

If the real contract between the parties in this case was to settle only the right of the widow, and the rights of the child were not in the contemplation of the parties, and no settlement had as to such rights, and this was the understanding of the parties at the time the release was prepared and executed, then it cannot be said that the rights of the child have been ex-

tinguished. And the language of the release being broad enough to compass the rights of all beneficiaries, including the child, then, upon clear and convincing proof being made that it speaks other than the real contract entered into, it ought to be reformed so as to express the real agreement of the parties. Of course this question must be determined from the proof.

We have read the pleadings with care, and the answer of defendant, it seems to us, supports and corroborates plaintiff's allegations in both her petition and reply that the rights of the child were not in the contemplation of the parties in the settlement. The answer says:

"And defendant says that at the time of his death Ben Herndon left surviving him no issue, but that he left surviving him as his sole and only heir at law, Carrie Herndon, his widow." etc.

And again:

"The said Carrie Herndon, as the widow and sole heir at law of said Ben Herndon, and the only person entitled to recover," etc.

These averments in its answer seem to indicate that, even at the time of answer, defendant thought, as a matter of law, that the child had no rights to be either recovered for or settled for. If it so believed at the time of answer, it lends color to the claim of plaintiff that it so believed at the time of settlement, and that it settled without any reference to such rights as the child had under the law.

Defendant now admits in argument, as we have decided, that the child did have rights exactly as if in existence at the date of its father's death, but contends that under the very broad language used in the settlement those rights were extinguished along with those of the widow, the other beneficiary. As to whether settlement by the widow, without suit, for herself and all other beneficiaries under the statute would bar a recovery by the other beneficiaries, that is not necessarily involved here. Assuming, without deciding, such to be the law, the contention here, as shown by the pleadings, is that she contracted in

the settlement regarding no rights save her own as an individual.

. We are of the opinion that the court erred in sustaining the demurrer to the reply and in dismissing the action, and that for such error the cause should be reversed and remanded.

By the Court: · It is so ordered.