## ST. LOUIS & S. F. R. CO. v. REED.

### No. 2991. Opinion Filed May 6, 1913.

#### (132 Pac. 355.)

1. **FRAUD—Proof.** Fraud is a fact, to be established by evidence as any other fact.

2. **RELEASE—Validity—"Fraud"—Sufficiency.** As a general rule, before fraud (sufficient to warrant the cancellation of a release given by an injured passenger to a railroad company in a settlement for damages) can be established, it must be shown that a material representation has been made; that it was false; that when it was made the speaker knew it was untrue, or that it was made recklessly, without knowledge of its truth and as a positive assertion; that it was made with the intention that it should be acted upon by the one to whom it was made; that it was so acted upon by reason of the reliance placed upon it; and that damage or injury resulted thereby.

3. **FRAUD—Fraudulent Misrepresentations—What Constitutes—"Representation."** A "representation" within the meaning of the law of fraud is anything short of a warranty, which proceeds from the action or conduct of the party charged, and which is sufficient to create upon the mind a distinct impression of fact conducive to action. The gist of fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, and, if this result is actually accomplished, the means of accomplishing it are immaterial.

4. **RELEASE—Pleading in Avoidance—Sufficiency.** Pleadings examined, and allegations of fraud held to be sufficient.

5. **SAME—Validity—Fraud—Sufficiency of Evidence.** Evidence examined and held to be sufficient to sustain a verdict.

(Syllabus by Robertson, C.)

*Error from District Court, McCurtain County;*
*James R. Armstrong, Judge.*

Action by Mrs. Dora Reed against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*W. T. Evans, R. A. Kleinschmidt,* and *E. H. Foster,* for plaintiff in error.

*Howe & Stanley, for* defendant in error.

Opinion by ROBERTSON, C. Defendant in error, while en route from Madill to Idabel, was injured at the former place on February 12, 1909, by a train belonging to plaintiff in error. She was carried from Madill to Hugo on the same train, where she was taken in charge by the company's claim agent, who there secured the services of a company physician, who examined her and told her that she was not seriously injured. While waiting at Hugo for the train to depart for Idabel she was asked by the claim agent to sign a release for damages and in consideration of $10 did execute a full and complete release and delivered the same to the claim agent. After completing her journey to Idabel, by the same train, on the same day, she discovered that she was more seriously injured than she thought, or than she had been told by the company physician. She at once brought suit for damages. The company answering, admitted liability, but pleaded in bar the written release herein above mentioned. Plaintiff replied by general denial, and, in addition, alleged that she was induced to and did execute the release by reason of the false and fraudulent representations made to her at the time of its execution by the claim agent and the company physician, and without which she would not have signed the same; that she relied upon and believed said statements to be true; that they were false and untrue; and that she was deceived thereby, etc. Upon the issues thus joined trial was had to the jury, which resulted in a verdict for plaintiff, on which judgment was entered. Defendant brings error and assigns numerous specifications; the only question, however, upon which it relies for reversal, in the language of counsel for plaintiff in error (Brief, p. 25) is:

"Our contention here, stated in plain language, is that there is a failure on the part of the plaintiff to establish by the evidence the allegations of the reply to the effect that the release was obtained through fraud and misrepresentation."

The affirmative matter of plaintiff's reply is as follows:

"Further replying to said answer and release mentioned therein, plaintiff says that owing to her injuries which she sustained by the reasons mentioned in her petition in the above-entitled action, she was greatly shocked and mentally disturbed; that immediately after she had received said injuries she was taken on the same train to the said St. Louis & San Francisco Railroad Company's physician, at Hugo, Okla., where she was examined by said physician and agents of said defendant, on the same day and within a short time after her arrival, and for the purpose of obtaining same, and of inveigling and deceiving her into executing it, the physician and the claim agent of the defendant stated to the plaintiff that she was but slightly injured and would recover her health in a short time, and that her injuries consisted only of slight bruises and the shock and jar of the cars at the time of her attempt to enter the said cars, that she was scared worse than she was hurt, and that she would never know she had been hurt by morning. Plaintiff, further replying, says said statements and representations were false and untrue, that plaintiff relied upon and believed said statements and representations, and was induced thereby to sign the release, and that, had she known they were false, she would not have signed it."

At the trial the following evidence relating to the alleged fraud was offered, to wit (case-made, p. 29):

"Q. What did he (meaning the company physician) say your condition would be in the morning, if anything? Mr. Foster: We object to the question because it calls for a statement of an opinion which wouldn't be ground, or representation of facts that would justify the variance of the release. By the Court: Overruled. (Defendant excepts.) A. Well, the doctor said I wasn't hurt much and that I would be all right by morning; that there wasn't any bones broken; that I would be all right. (Defendant moves to strike out the answer of the witness. Motion overruled. Defendant excepts.) Q. Did you believe that statement? A. Yes, sir; I believed it, but I knew before I left Hugo that I was hurt worse than the doctor claimed I was. Q. That was after you made the release? A. Yes, sir.

Q. Now, you stated you believed the doctor's statements; if you had known your condition, would you or not have signed the release? (Objected to by defendant as calling for a conclusion and conjecture of witness. Overruled. Exceptions.) A. No, sir; I wouldn't have signed it if I knew I had been hurt."

On cross-examination (case-made, p. 38):

"Q. Then why did you rely on the statement he made to you? If you knew he hadn't examined you properly, why did you believe and rely on what he told you? A. Well, I don't know; he just said I wasn't hurt much, and I supposed he knowed."

On page 60 of the case-made cross-examination of Dr. White, the company physician:

"Q. Didn't you say that, 'Your injuries are slight and don't amount to anything, and will be all right in a few days?' A. Yes, I said, 'Your injuries are slight and don't amount to anything and you will be all right in a few days, except probably for some soreness.'"

And on page 61 of the case-made:

"Q. Isn't it a fact that ofttimes an injury caused that way from a bruise that will cause some internal injury that cannot be detected from the outside by any sort of an examination until the expiration of time; the bruise may be had upon the bowels or on the side or under the rib where this one was and internal injury result, and it might not develop for some time after the injury is given? A. Yes, sir. Q. And, Doctor, what sort of an examination does it take to determine whether or not such an injury exists? A. You just have to wait and observe the symptoms that follow for an internal injury."

And on page 62 of the case-made:

"Q. Where the blow is very severe, isn't it a fact this contusion on the outside shows up ten or twelve hours after the accident? A. It depends on the nature of the object they come in contact with. Q. What would you say about a person injured by falling against the iron railing of a coach, striking upon the railing as this woman did, and then suffering great pain for a month or more as a result of that injury? A. It might be muscular or internal injury. Q. If it was a muscu-

lar, did you mean to tell her she would suffer three or four weeks? A. I told her a few days."

Plaintiff was a married woman, 52 years of age, and could neither read nor write, but signed the release by mark; her evidence clearly indicates that she knew little or nothing about the contents of the release. She signed it a few hours after the accident, without a chance to consult friends, or counsel, and at the urgent solicitation of the claim agent, who was on the train with her at the time of the accident.

The court instructed the jury on this phase of the case as follows:

"The court instructs the jury that by 'fraud' in this case is meant false representations, by which a person is induced to sign an instrument, the contents of which they understood perfectly, but which they would not sign but for false representations as to collateral matters. The court further instructs the jury that such falsity necessary to vitiate such an instrument may be actually known to the person making the representations, or should have been known by the person making them, exercising ordinary care and diligence; and if you find from the evidence in this cause that the company's physician, in the presence of the claim agent, willfully misstated the physical condition of the plaintiff, knowing it to be worse than he represented, or neglected to make an examination sufficient to determine her physical condition, and that her physical condition was worse than represented by said company's physician, then such representations made by the physician to said plaintiff acted upon by the claim agent and the plaintiff would be sufficient fraud to vitiate said release."

Fraud is a fact to be established by evidence, as any other fact. The general rule is that before fraud can be established it must be shown that a material representation has been made; that it was false; that when it was made the speaker knew it was untrue, or that it was made recklessly, without the knowledge of its truth and as a positive assertion; that it was made with the intention that it should be acted upon by the one to whom it was made; that it was so acted upon by reason of the reliance placed upon it; and that damage or injury resulted thereby. 20 Cyc. 13. An examination of the allega-

tions of plaintiff's reply shows a sufficient charge of fraud. The evidence introduced thereunder (portions of which are set out above), while not overly strong and positive, was sufficient to satisfy the jury. That there is some evidence supporting the allegations of the reply none will deny. Its weight and sufficiency was for the jury, and having been tested, not alone by the verdict, but by the trial court in denying defendant's motion for a new trial, will not be questioned here. Counsel for defendant insists that the statements of the physician were but the expression of an opinion as to the probable duration of the injuries. With this view we cannot agree. The jury found otherwise, and, under the rulings of the trial court, we think the finding was correct.

The statements made by the physician within an hour or so after the accident occurred was of such positive character that it amounted to a representation of material fact, and the rule in such case seems to be that a representation within the meaning of the law of fraud is anything short of a warranty, which proceeds from the action or conduct of the party charged, and which is sufficient to create upon the mind a distinct impression of fact conducive to action. The gist of fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, and if this result is actually accomplished the means of accomplishing it are immaterial. 20 Cyc. 14.

In this case the physician had superior knowledge of the subject-matter under discussion. The plaintiff, as shown by the evidence, was an ignorant woman and did not have such knowledge; therefore his expression of an opinion 'which he did not entertain, because it was contrary to the facts, was such a misrepresentation as would warrant the cancellation of the release secured by reason thereof. We are of the opinion that the able and well-reasoned opinion by Justice Dunn in *St. Louis & San Fransico R. Co. v. Richards,* 23 Okla. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032, is controlling authority on every question in the instant case, except, perhaps, the last

one above mentioned, *i. e.*, that the expressions of the physician were not representations, but merely statements of an opinion, and therefore not grounds to cancel the release on the grounds of fraud.  But with this view, as hereinabove indicated, we do not agree.  Litigants who do not desire the good faith of their acts questioned should not use such unseemly haste in their efforts to escape liability on account of admitted wrongful acts, such as the evidence in this case discloses, and when we consider fairly all the facts and circumstances appearing in evidence in this case; the admitted liability on the part of the company; the age and intelligence of the injured woman; the fact that the claim agent was on the train with her; that he procured a carriage at Hugo, without solicitation, and took her to the hotel and secured the services of the company physician; together with the representations made to plaintiff by the physician; the taking of the release immediately thereafter and within a few hours after the accident; the insignificant sum of $10 allowed her; the fact that she was injured more seriously than she realized—all indicate an undue haste on the part of the railroad company and which with other facts and circumstances, as detailed in the evidence, warranted fully the verdict of the jury.

We can find no error in the record that would warrant a reversal, and the judgment should therefore be affirmed.

By the Court:  It is so ordered.