## ST. LOUIS & S. F. R. CO. v. CHESTER.

No. 3174. Opinion Filed January 19, 1914.

(138 Pac. 150.)

1. **RELEASE—Personal Injuries—Fraud.** This court will not hesitate to set aside and avoid a release from damages in a personal injury case, where same has been obtained through fraud or misrepresentations upon the part of the defendant which have misled the injured party into signing same. But where the grounds relied on to avoid a written contract of settlement and release are fraud and misrepresentations in its procurement, the evidence as to the particular facts constituting the same should be clear and convincing.

2. **SAME—Right to Avoid—Grounds.** A written contract cannot be avoided on slight or frivolous grounds.

3. **COMPROMISE AND SETTLEMENT—Validity and Enforcement.** It is the policy of the law to encourage the settlement and compromise of controversies as a discouragement to litigation.

(Syllabus by Brewer, C.)

*Error from County Court, Marshall County;*
*A. H. Ferguson, Judge.*

Action by Joel Chester against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and rendered.

*W. F. Evans, R. A. Kleinschmidt,* and *J. H. Grant,* for plaintiff in error.

*F. E. Kennamer* and *Chas. A. Coakley,* for defendant in error.

Opinion by BREWER, C. The defendant in error, Joel Chester, who will be called plaintiff, was in Madill, Okla., on the night of August 21, 1908, and was injured by being struck at a crossing by a box car, knocking him down. Plaintiff had been drinking some, and at the suggestion of the city marshal had gone off the street into a hotel. Hearing a train whistle, he ran out to go to the depot to take a train to the next station. Between the hotel and the depot he had to cross a side track. A box car was being backed along this track to the ice plant. The conductor walked across the crossing between the hotel and depot, ahead of the box car, and was several yards in front of the moving car. A brakeman was on the front end of the moving car, with a lantern. As the plaintiff was about to walk in front of the car, the brakeman hallowed at him, and signaled for a stop, but he either did not hear or did not heed, and was struck. He was taken to the hospital, and his arm had to be amputated. He was then removed to the hospital at Sherman, Tex., where he remained until he recovered.

About a week after plaintiff was hurt, defendant's claim agent called on him and offered to talk settlement. Plaintiff refused to consider a settlement at that time. On September 21, 1908, after plaintiff had been able to be up a couple of weeks and was about ready to leave the hospital, the plaintiff indicated to his physician that he wanted to talk settlement, and the claim agent, Mr. V. E. McInnis, a lawyer of Oklahoma City, went to Sherman and saw the plaintiff, and made a settlement of the claim for $300, and secured from plaintiff a release in full of all claims for damages on account of the injury.

On October 18, 1910, this suit was brought, alleging negligence on the part of defendant as the cause of the injury, and

claiming damages in the sum of $1,995. The defendant answered by general denial and set up the release as a complete bar to a recovery. The plaintiff filed a reply alleging fraud, misrepresentation, and deceit in the procurement of the release. The jury found for plaintiff in the sum of $1,650.

The defendant demurred to the evidence as not being sufficient to show either negligence on the part of defendant or fraud or misrepresentation in the procurement of the settlement and release. These points are urged here.

We have carefully scrutinized every word of the evidence, and it utterly fails to show either fraud or misrepresentation upon the part of the claim agent, or any other just, sufficient, or lawful reason why plaintiff should be allowed to avoid his contract of settlement.

This court has evinced no hesitancy in setting aside releases in personal injury cases, when procured by fraud and misrepresentations as to material matters, or for other reasons sufficient in law, as may be observed by a reference to the following cases: *St. L. & S. F. R. Co. v. Richards,* 23 Okla. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032; *St. L. & S. F. R. Co. v. Nichols,* 39 Okla. 522, 136 Pac. 159; *Herndon v. St. L. & S. F. R. Co.,* 37 Okla. 256, 128 Pac. 727; *St. L. & S. F. R. Co. v. Read,* 37 Okla. 350, 132 Pac. 355.

But this does not mean that a contract, fairly and honestly entered into, can be avoided for slight or frivolous reasons. Indeed, the rule is quite to the contrary. The law and the public policy of all civilized countries, so far as we have observed, favors settlements and compromises, entered into fairly and in good faith between competent persons, as a discouragement to litigation. Indeed, when persons have a dispute and get together and consider and weigh the facts out of which it arises, and then come to an agreement, fairly and honestly made, and reduce same to writing, should either of such parties later undertake to repudiate and avoid its terms, the evidence he offers, to be sufficient, must be clear and convincing. Such evidence will generally rest in parol, and, if the person seeking to avoid his written contract has been the victim of fraud or misrepresentations

sufficient to afford him relief, it is not difficult to produce, nor is it a harsh rule to require, the evidence to point out the fraud, or false statement of fact, or other reasons relied on, so that it can be clearly seen by the court or jury that the contract should not stand.

"In the case of *Mateer v. Railway Co.*, 105 Mo. 320, 16 S. W. 839, the court said: 'The law favors the compromise and settlement of disputed claims. It is to the interest of the commonwealth that there should be an end to litigation. If those settlements, fairly made and entered into, are to be disturbed upon frivolous grounds, it will often deter these companies from doing justice to their employees, who have received injuries, for fear of future litigation. A wise policy would dictate that they be encouraged to do justice in these cases outside of the courts, and that their settlements should be sustained when they are just and fair.' "

"In the case of *Chicago & A. Ry. Co. v. Green* [C. C.] 114 Fed. 682, the court said: 'And I may add that, if such settlements are to be disturbed because of the impression the judge may entertain that the amount of compensation was inadequate, it would establish a most uncertain and dangerous rule of law. If the employer, believing from the facts in his possession that there was no legal liability for the injury sustained by his employee, nevertheless recognizes a moral obligation to contribute aid of a substantial character to the unfortunate, under the circumstances surrounding his situation at the time, and the employee is willing to accept it, before a court takes upon itself the function of undoing such settlements, the evidence of fraud or incapacity ought to be made clear and persuasive.' "

(34 Cyc. 1103; *Lomax v. S. W. Mo. Elec. R. Co.*, 119 Mo. App. 192, 95 S. W. 945; *Bierer's Appeal*, 92 Pa. 265; *Pederson v. Seattle St. Ry. Co.*, 6 Wash. 202, 33 Pac. 351, 34 Pac. 665; *Wallace v. Skinner*, 15 Wyo. 233, 88 Pac. 221; *St. P., M. & O. Ry. Co. v. Bellwith*, 83 Fed. 437, 28 C. C. A. 358; *Southern D. Co. v. Silva*, 125 U. S. 247, 8 Sup. Ct. 881, 31 L. Ed. 681; *Farrar v. Churchill*, 135 U. S. 609, 10 Sup. Ct. 771, 34 L. Ed. 250; *Farnsworth v. Duffner*, 142 U. S. 43, 12 Sup. Ct. 164, 36 L. Ed. 931; *Clark v. Reeder*, 158 U. S. 505, 15 Sup. Ct. 849, 39 L. Ed. 1070.)

In this case the plaintiff had practically recovered; the extent of his injury was fully known; a month had elapsed, so that the liability, or want of liability, of the defendant could have been

fully investigated. The shock of the injury and its attending circumstances were over. No unseemly haste had been used. Earlier plaintiff had declined to consider a settlement; when he became so inclined the agent came to see him. They began negotiating about 10 o'clock a. m. The plaintiff made large demands. At noon no agreement had been reached; after dinner the matter was resumed until 3 o'clock, when they agreed on the amount. The papers were drawn and taken to a notary public in another building, where the same were read to and carefully explained to plaintiff. He expressed satisfaction and signed them and received the money, and then sent for a tailor to take his measure for and make him a suit of clothes. Plaintiff then spent the rest of his money and two years later filed suit. No act of fraud is shown. The plaintiff merely says: "I did not understand this legal document. I do not know the meaning of certain words used"—such as "settle," "apparent," "compromise"—and yet he admitted that he could speak and write the English language; that he owned and managed his own lands and had required written leases from his tenants. He stated that on the morning of the settlement he was shown some whisky, and drank of it, but he admitted it was in another room from where he met and negotiated with the agent; that the agent did not see him drink or give him the whisky, or know anything about it, or that he had used it; and that the settlement was not concluded for nearly five hours after he took the drink, and that he had drunk no more in the meantime, and was at no time drunk. The only representations it is claimed the agent made were that the agent stated that plaintiff's right to recover was to his mind doubtful; and that he had been informed that plaintiff was drinking when hurt. These statements were both true. From this record the gravest doubt arises as to his right to recover. All the proof shows that he was drinking when hurt. The city marshal had told him he was too drunk to stay on the street and pushed him into the hotel from which he started to the train. The plaintiff says he was drinking "Longhorn," whatever that may be. No claim is made that the release was falsely read, or only partially read, or that any improper influences were brought to bear to induce him to sign it.

If this settlement can be repudiated under the evidence, it would be indeed rare to find one that would stand; and the defendant would be foolish to further undertake to make settlements with claimants. The evidence having been fully developed and being wholly insufficient, no good purpose will be served in prolonging this litigation.

The cause should, therefore, be reversed and rendered here. By the Court: It is so ordered.