**CHICAGO, R. I. & P. RY. CO. v. BURKE.**

No. 9253—Opinion Filed July 30, 1918.

Rehearing Denied Oct. 23, 1918.

(175 Pac. 547.)

**1. Release—False Representation—Rescission.**

The settlement and release of a cause of action brought about by false representation of material facts on the part of a surgeon, the servant of the defendant, upon which plaintiff relied as to the injuries received by plaintiff, notwithstanding the falsity of said representation was unknown to the surgeon making it, may be rescinded and avoided, although there was no fraud or other wrongful intent to deceive or defraud.

**2. Same.**

Plaintiff was injured while employed as a brakeman on one of defendant's trains. Soon thereafter defendant's physician, who treated plaintiff, made a physical examination of plaintiff's person, represented to plaintiff that his injuries were not permanent, which information was communicated by the surgeon to the claim agent of the defendant making the settlement, prior to the making thereof, and afterward it developed that said injuries were permanent. Held, that such representations were material, and plaintiff had a right to rely thereon in effecting a settlement with defendant, and since the representations were untrue in fact, although the falsity was not known to the physician at the time they were made and were not made with intent to deceive, plaintiff had a right to rescind the settlement; such fact constituting fraud in law.

**3. Same—Cause of Action—Defense.**

Such settlement and release of cause of action, brought about by false representation of material fact upon which plaintiff relied, cannot be successfully set up as a defense to the action.

(Syllabus by Collier, C.)

Error from District Court, Seminole County; J. W. Bolen, Judge.

Action by J. E. Burke against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, motion for new trial overruled, and defendant brings error. Affirmed.

C. O. Blake, R. J. Roberts, W. H. Moore, and J. W. Willmott, for plaintiff in error.

Ledbetter, Stuart & Bell and Cobb & Cobb, for defendant in error.

Opinion by COLLIER, C. In this action the defendant in error seeks recovery of $40,000 damages from the plaintiff in error for personal injuries suffered by him. Hereinafter the parties will be styled as they were in the trial court.

The defendant answered and set up that consideration of the sum of $2,500 paid to the plaintiff by the defendant had compromised said claim and released and forever discharged the defendant from any and all liability for all claims, for all injuries including those that may hereafter develop, as well as those apparent, and attached to said answer, as an exhibit, copy of said written release in settlement, which is as follows:

"Whereas, I, J. E. Burke of the county of Pottawatomie, state of Oklahoma, was injured at or near Shawnee, Oklahoma, on or about the 1st day of October, 1913, on a line of railway owned or operated by the Chicago, Rock Island & Pacific Railway Company, while employed as a switchman at Shawnee, Oklahoma, at which time I injured my left knee, and again on January 30, 1914, I was injured at Shawnee, Oklahoma, while employed as a switchman, at which time I injured my right knee or leg under circumstances which I claim rendered such company liable in damages, although such liability is denied by such railway company, and the undersigned, being desirous to compromise, adjust and settle the entire matter:

"Now, therefore, for the sole and only consideration of the sum of two thousand five hundred dollars ($2,500.00) to me this day paid by the Chicago, Rock Island & Pacific Railway Company, in behalf of itself and other companies whose lines are owned or operated by it, I do hereby compromise said claim and do release and forever discharge the said the Chicago, Rock Island & Pacific Railway Company, and all companies whose lines are leased or operated by it, their agents and employes, from any and all liability for all claims for all injuries, including those that may hereafter develop, as well as those apparent, and also do release and discharge them of all suits, actions, causes of actions and claims (15) for injuries and damages, which I have or might

have arising out of the injuries above referred to, either to my person or property, and do hereby acknowledge full satisfaction of all such liability and causes of action.

"I further represent and covenant that at the time of receiving said payment and signing and sealing this release I am of lawful age and legally competent to execute it, and that before signing and sealing it I have fully informed myself of its contents and executed it with full knowledge thereof.

"I further represent that I have read the above release and that I fully understand the terms thereof.

"Given under my hand and seal this 26th day of February, A. D. 1915.

"[Signed] J. E. Burke.

"Paid by draft No. 35634, drawn by Chas. Hardcastle. State of Oklahoma, Pottawatomie County.

"I, Verna Whitesell, a notary public in and for said county and state, hereby certify that I have read the above and foregoing release to J. E. Burke and he states that he fully understands the same and that the facts therein contained are true. Witness my hand this February 26, 1915.

"[Signed] Verna Whitesell, N. P."

The plaintiff, "by reply, alleges that the said release and settlement were obtained by false and fraudulent representation made to him by the doctors and claim agents of defendant, to the effect that he would soon be well and that injuries were not permanent, and that he relied upon said representation and made settlement relying on the same; that injuries were really permanent; that said representations were untrue, and that the plaintiff tendered back to the defendant the $2,500 received in settlement and asked that said release be held null and void."

It is argued in brief of defendant "that this appeal presents but one question, and that is that there was no evidence of fraud in procuring the release executed by the plaintiff," and consequently it is unnecessary to recite any of the evidence given in the case other than the evidence bearing upon said release.

The evidence is that the plaintiff made a settlement with Mr. Morrison, the general claim agent, and Mr. Copley, the general superintendent, and that Mr. Morrison and Mr. Copley stated that a history of the case from Chicago showed that Dr. Porter claimed there was no permanent injury.

We quote from testimony of Mr. Burke on this line as follows:

"A. When I assured them that Dr. Porter had assured me that I would fully re-

cover from this injury, they said in words to that effect that the communication showed that too; that they did not talk to them personally about it, but the communication showed that. Q. Now, Mr. Burke, after you made the settlement, after you signed up with Mr. Hardcastle over at Shawnee, tell the jury what you next did? A. I did not sign up at El Reno. I went over to Shawnee, and Mr. Morrison and Mr. Copley were quite busy, and it was agreed they would send those papers over to Shawnee for me to sign; that I signed the release."

Dr. Porter, who was the surgeon and servant of the defendant, and who treated the plaintiff, testified there was nothing in the joint to cause permanent injury; that the leg was going to be all right and would fully recover. Dr. Byrum testified by deposition as follows, as to whether or not the injury left a permanent defect:

"Q. State whether or not in your judgment, Doctor, from your examination of the leg, the injury to the leg is permanent. A. I don't know how to answer that question; I don't want to give anything which is hypothetical. The dislocation and removal of semilunar cartilages will leave permanent defects in the knee. Q. What is your judgment as to whether that leg will ever be as good as new, or as good as it was before the injury? A. A knee with semilunar cartilages misplaced and removed, the ligaments lacerated, tenderness with the accompanying inflammation, will leave a knee with its function permanently impaired. However, the inflammation may subside, nature replace the cartilage with new tissues, these tissues never completely fulfill the functions of the original."

Plaintiff further testified that Dr. Porter said it was the injury and that he thought the semilunar cartilage was injured or thrown out of place; that he operated upon the plaintiff about the 8th day of August; they made an incision from here to here, an incision of 2½ inches on the inside of the knee, from the kneecap to the back part of the knee; that the puncture he received on his left knee occurred right in the joint on the inside of the knee; that it has never gotten so that it is as good as it was before this injury; that it pops when it is thrown out; that upon working the left and right knees he could tell that there was not the same lubrication in the knee injured as in the other knee; that he knew this by grating and grinding and more of a mechanical move; that he has to force the move in this left limb and the other comes natural and gradual; that nerves from here down have been severed in the leg; that in the last six months, or in the last year, there has not been any improvement in his leg; that, if

anything, it seems to be getting worse; that he has given it treatment and went to Hot Springs and just recently returned, and has given it massage and treatment thoroughly; that since receiving the injury he has been able to work about one-half the time; and that he is not able to perform his duties of a brakeman. Plaintiff further testified that Mr. Redding, the division superintendent, shortly after he had made settlement and signed the release, came over to Shawnee and stated to plaintiff, "You are incapacitated for yard service," and at that time plaintiff turned to him and said, "You got the release through fraud," and that when he made the settlement he relied upon Dr. Porter's statement, believing it was true, or would not have settled; that he would not have made that settlement if he believed his leg would not get well; that he agreed to take the $2,500 thinking he would fully recover, being assured by these doctors he would get well; that what he wanted was the use of his limb, and, if they were correct that he would get well, he was compensated enough; that he wanted to go to work and be honest and loyal to them.

On cross-examination, the plaintiff testified: That these fraudulent representations were made by Dr. Porter and Dr. Plummer; that when he left Chicago he went into see Dr. Porter, who examined the leg and told him to work it. He examined the knee, got the tape measure and started to measure it; however, he did not do it for some reason. He was a very busy man and examined it, and plaintiff called his attention to the grating and grinding of the knee, and he said, "That will come all right," and also said, "With gradual usage your leg will be all right, nothing in that will cause permanent injury," and plaintiff believes his next words were, "However, it would be better if the company would give you lighter duties to perform for a time so as to give the leg gradual use." That, in substance, Dr. Porter told him his leg was going to get well. That the case was turned over absolutely to Dr. Porter, but he would go to Dr. Plummer's office from time to time and he examined the leg and thought it was coming all right and he thought his leg would be all right; come well.

At the close of the evidence, the defendant demurred thereto, which was overruled and excepted to. Thereupon the defendant requested that the court instruct the jury as follows:

"(1) The court instructs the jury that,

under the law and the evidence, its verdict must be for the defendant"

—which instruction the court refused to give, and the refusal to give said instruction was duly excepted to.

The jury returned the following verdict:

"We, the jury, drawn, paneled and sworn in above-entitled cause, do upon our oaths find, for the plaintiff in the sum of $7,500.00 less $2,500.00"

—to which the defendant excepted.

Timely motion was made for a new trial, which was overruled, exceptions saved, and error brought to this court. The assignments of error are:

(1) The court erred in overruling the defendant's demurrer to the plaintiff's evidence.

(2) The court erred in refusing to give the jury instruction No. 1.

As previously stated, it is argued by defendant in its brief, "that but one question is presented by this appeal, and that is that there was no evidence of fraud in procuring the release executed by the plaintiff," and therefore the review of this case will be confined to said question. The precise question involved in this case has not heretofore been passed upon by this court.

By adopting and pleading the release as a defense the defendant ratified the act of its surgeon in making the statement to the plaintiff, so as to present an issue of fact whether the release was void for constructive fraud. Bertha v. Regal Motor Car Co., 180 Mich. 51, 146 N. W. 389. In the body of the opinion it is said:

"It is a proposition of law too fundamental and too well established to require a citation of authorities that, if a party adopts even unauthorized acts of another, and has received and accepted benefits accruing therefrom, he thereby adopts and ratifies the instrumentalities by which the results were obtained, and is estopped from denying that the agent was authorized to act. So in this case, by accepting this release, which upon its face is prima facie a release in its favor and for its sole benefit, by pleading the release as a defense to the suit, by refusing to accept the tender back of money which has been paid to secure the release, by its course of cross-examination to show that it had obtained the release and claiming the benefits of it, by admitting in open court that it had paid Dr. Goux for his services in caring for plaintiff, defendant must be held to have adopted and ratified the acts of the two representatives of the insurance company."

In each of the following cases: St. Louis

& S. F. Ry. Co. v. Richards, 23 Okla. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032; St. Louis & S. F. Ry. Co. v. Reed, 37 Okla. 350, 132 Pac. 355; St. Louis & S. F. Ry. Co. v. Chester, 41 Okla. 369, 138 Pac. 150; St. Louis & S. F. Ry. Co. v. Bruner, 52 Okla. 349, 152 Pac. 1103; C., R. I. & P. Ry. Co. v. Cotton, 62 Okla. 168, 162 Pac. 763—the releases executed in settlement of personal injuries received were held to be invalid on account of "actual fraud perpetrated in securing the respective settlements" set up, while in the instant case the release is attacked "on the ground of constructive fraud; fraud in law."

The actionable negligence of the defendant, and the injuries suffered by the plaintiff, are not questioned by the defendant; defendant basing its defense on the release which was executed by the plaintiff. The uncontradicted evidence is that the plaintiff was treated and operated upon for the injuries received by the negligence of defendant, by the surgeon of the company, who positively stated to the plaintiff that his injuries were not permanent and he would recover, and these statements of the surgeon were communicated to the claim agent who made the settlement with the plaintiff. Such communication by the surgeon to the claim agent doubtless was made with the intention of influencing the claim agent as to such settlement.

If the statement of the surgeon to the plaintiff, and communicated to the claim agent, had been merely an expression of his opinion as to the injuries suffered by the plaintiff, such statements would not have been sufficient to have avoided the release in question, which is in accord with the unbroken line of decisions, but the positive statement of the surgeon, the servant of the defendant, in the instant case, was that the injuries of the plaintiff were not permanent and that he would fully recover, and we are of the opinion that the positive statements made by Dr. Porter, the servant of the defendant, to the plaintiff, were material, and that plaintiff had a right to rely thereon in making settlement, and said representations being untrue in fact, even though the falsity was not known to the said surgeon, and were not made with intent to deceive the plaintiff, plaintiff had a right to rescind the settlement, as the statement of the surgeon of the company that the injuries of plaintiff were not permanent and he would entirely recover, upon which statement plaintiff relied, constituted constructive fraud; fraud in law.

In Jacobson v. Chicago, Milwaukee & St.

Paul Ry. Co., 132 Minn. 181, 156 N. W. 251, L. R. A. 1916D, 144, Ann. Cas. 1918A, p. 355, it is held:

"(1) A settlement and release of a cause of action, induced and procured by false representations of material facts, the falsity of which was unknown to the person making them, may be rescinded and avoided, though there was no fraudulent or other wrongful intent to deceive or defraud.

"(2) Plaintiff was injured while a passenger on one of defendant's trains; soon thereafter defendant's physician made a physical examination of plaintiff's person and, to induce or cause him to act thereon, represented that he had suffered no serious injury, had no broken bones, and would recover in the course of two or three weeks. It is held that the representations were material, plaintiff had the right to rely thereon in effecting a settlement with defendant, and since the representations were untrue in fact, though the falsity was not known to the physician at the time, and were not made with intent to deceive, plaintiff had the right to rescind the settlement. Such facts constitute fraud in law."

In the body of the opinion it is said:

"Defendant's contention is that, to entitle plaintiff to rescind the release, it was incumbent upon him to show that he was induced to execute it by the intentional deception of the physician and claim agent, and that the court erred in not so charging the jury. We do not sustain the point. It may be conceded that an essential element of the old common-law action of deceit is intentional fraud and deception, and that as a general rule no recovery can be had in such an action where intentional deception does not appear. And there are many authorities holding to a strict application of the rule, and as requiring an affirmative showing of an intent to defraud and deceive in all cases where relief is sought on the ground of fraudulent representations. As thus strictly applied, much injustice has resulted, and the courts have ingrafted upon the rule modifications and qualifications, and the present trend of judicial opinion does not require in all cases a showing of an evil intent. The injury suffered by the defrauded party may be just as great, whether the fraud was intentional or unintentional. So in actions the result of which places the parties in status quo, restoring to each what he parted with, equity will grant relief where the representations which induced and brought about the contract were in fact false, though made in good faith; the additional requirement being that the representations must appear to have been material, not mere opinion, and of a character to justify reliance thereon by the defrauded party. In such cases the courts grant relief either upon the ground of fraud in law, sometimes spoken of as constructive fraud, or mutual mistake. It is not material whether it be termed fraud in law or mistake; the result is the same in either case. The rule now often applied is tersely summed up by the Iowa Supreme Court in the statement that a 'party cannot falsely assert a fact to be true and induce another to rely upon such statement to his prejudice, and thereafter hide behind a claim that he did not know it was false at the time he asserted it.' Haigh v. White Way Laundry Co., 164 Iowa, 143, 145 N. W. 473, 50 L. R. A. (N. S.) 1091. The rule has frequently been stated and applied in our former decisions both in actions for a rescission of the contract and where the alleged fraud has been presented as defensive matter. 1 Dunnell, Minn. Dig. § 3819; Drake v. Fairmont Drain, Tile & B. Co., 129 Minn. 145, 151 N. W. 914; Brooks v. Hamilton, 15 Minn. 26 [Gil. 10]; Hedin v. Minneapolis M. & S. Ass'n, 62 Minn. 146, 64 N. W. 158, 35 L. R. A. 417, 54 Am. St. Rep. 628; Busterud v. Farrington, 36 Minn. 320, 31 N. W. 360. It was held in Bullitt v. Farrar, 42 Minn. 8, 43 N. W. 566, 6 L. R. A. 149, 18 Am. St. Rep. 485, that it is a fraud for one to make an unqualified representation that an unqualified statement amounts to an affirmation as of one's own knowledge. Numerous decisions in other states support the same doctrine. 14 Am. & Eng. Enc. (2d Ed.) 94; Holcomb v. Noble, 69 Mich. 396, 37 N. W. 497; Johnson v. Gulick, 46 Neb. 817, 65 N. W. 883, 50 Am. St. Rep. 629; Pattison v. Seattle, R. & S. Ry. Co., 55 Wash. 625, 104 Pac. 825; Carroll v. United Railways Co. of St. Louis, 157 Mo. App. 247, 137 S. W. 303; Missouri, K. & T. Ry. Co. v. Maples (Tex. Civ. App.) 162 S. W. 426; Kathan v. Comstock, 140 Wis. 427, 122 N. W. 1044, 28 L. R. A. (N. S.) 201, and cases cited in note.

"In the case at bar the physician representing defendant made a physical examination of plaintiff a short time after the accident; upon the examination so made he represented to plaintiff the facts heretofore stated, which were repeated by the claim agent. The jury was fully justified in finding the representations were in fact untrue, though not intentionally so, and that they were made to induce a settlement of plaintiff's claim for damages. Plaintiff relied, and had the right to rely, upon the representations, and the jury properly found that he was induced thereby to make the settlement and sign the release. This brings the case within the rule of the authorities cited. The representations, aside from the statement that no bones were broken, were matters of substance and not the mere opinion of the physician. Marple v. Minneapolis & St. L. R. Co., 115 Minn. 262, 132 N. W. 333, Ann. Cas. 1912D, 1082. The trial court was therefore not in error in refusing the requested instructions that an intention to deceive was an essential to plaintiff's right to recover, nor was there error in the refusal of the request to the effect that if the jury found that

plaintiff suffered no broken bones he could not recover."

In Gertrude Haigh v. White Way Laundry Co., 164 Iowa, p. 143, 145 N. W. 473, 50 L. R. A. (N. S.) 1091, it is held:

"The mere expression of an erroneous opinion concerning the recovery of one injured, if honestly made, will not authorize the setting aside of a settlement for the injury; but if coupled with statements of fact concerning the nature and character of the injury which were not true, but having a direct bearing upon the extent of liability and likely to induce a belief in speedy recovery, will constitute ground for setting aside the settlement and release."

In Tatman v. Philadelphia, Baltimore & Washington R. Co., 10 Del. Ch. 105, 85 Atl. 716, it is held:

"An innocent misrepresentation by defendant's physician, relied on by both parties, as to the kind of injury received by plaintiff, may avoid the release."

In the body of the opinion it is said:

"A case in point is that of the Great Northern Ry. Co. v. Fowler, supra [136 Fed. 118, 69 C. C. A. 106]. There the complainant, a brakeman on the railroad, after being injured went with a claim agent of the company to the physician of the company, who found a scalp wound and a contusion of the shoulder and nothing more, but told the injured man that he was practically well and would be able to go to work in a week or two. Without other advice, the complainant settled for an amount equal to wages he would lose and bills for doctors and nurses. A release was given, which apparently was general in form, without specifying the injuries. Later it developed that the injuries were serious, the disability permanent, and a dangerous surgical operation was performed. The Circuit Court of Appeals affirmed the decision of the Circuit Court annulling the settlement and release. The appellate court found that there was a mutual mistake as to the nature and extent of the injuries and that the settlement was induced by the advice of the surgeon of the releasee without other advice, and therefore that the release should be set aside. The court distinguished the case before it from one where there was no misrepresentation on the part of the releasee and the releasor simply relied on the opinion expressed by the physician of the releasee employed to examine and report on the injuries. Such a case was Nelson v. Minneapolis, etc., Co., 61 Minn. 168, 63 N. W. 486. Judge Gilbert thus distinguished: 'But it is equally true that a mutual mistake of fact or an innocent misrepresentation of the facts of the releasor's injury, made by the releasee's physician, may be effective to avoid a release induced thereby.' "

In St. Louis, I. M. & So. Ry. Co. v. Hambright, 87 Ark. 614, 113 S. W. 803, it is held:

"If the chief surgeon of a railroad company in good faith represents to an injured employe that his injuries are slight and temporary when they are serious and permanent, and thereby misleads him into signing a release of the railroad company from damages, such release is not binding."

In M. F. Ladd v. Chicago, Rock Island & Pacific Ry. Co., 97 Kan. 543, 155 Pac. 943, it is held:

"A release of a claim against a railway company for damages for personal injury, for a nominal consideration, procured by false representations as to the conditions and effect of the release, signed under the mistaken belief that the injuries were neither serious nor permanent, that belief having been brought about by the statements of the railway company's doctor, is not binding on the person signing the release, where the injuries finally prove to be serious and permanent."

In St. Louis, Iron Mountain & Southern Ry. Co. v. Morgan, 115 Ark. 530, 171 S. W. 1187, it is held:

"Erroneous statements of a physician who treated plaintiff at defendants' hospital, that his injuries were not permanent, will, if relied upon by the plaintiff, render void a contract of release, signed by plaintiff, relieving defendant from liability."

In Balenger v. Southern Ry. Co., 106 S. C. 200, 90 S. E. 1019, it is held:

"For false representations of a railroad's surgeon as to the extent of an employe's injury, he failing to exercise due care in ascertaining the facts on which he based his opinion as to the condition of the injury, a release of the company's liability, thereafter obtained by the claim agent and signed by the employe to get further employment, as the surgeon knew would be necessary, may be set aside; the employe in signing having acted on the surgeon's representations."

The cases of St. Louis & S. F. Ry. Co. v. Richards, St. Louis & S. F. Ry. Co. v. Reed, St. Louis & S. F. Ry. Co. v. Chester, St. Louis & S. F. Ry. Co. v. Bruner, and Chicago, R. I. & P. Ry. Co. v. Cotton, supra, are not in conflict with the opinion expressed in this case. In short, we think a release for injuries suffered, whether brought about by actual fraud or by constructive fraud, fraud in law, as in the instant case, the party executing such release has a right to repudiate the same, and therefore the court did not err in overruling the demurrer to the evidence, or in declining to instruct the jury affirmatively for the defendant.

We are unable to say that the trial court

erred in overruling the motion for a new trial.

This cause is affirmed.

By the Court: It is so ordered.